### DECLARATION of ROBERT GILINSKY

I, Robert Gilinsky, do hereby declare:

### BACKGROUND/EXPERIENCE

1.     I am a Task Force Agent (TFO) with the Drug Enforcement Administration (DEA) and have been since 2022.  I have been employed as a Police Officer and Detective at the Grants Pass Police in Grants Pass, Oregon, since 2017.  My current assignment is at the Medford Resident Office in Oregon.  My training and experience include completion of the DEA basic course, Advanced Search and Seizure, and hundreds more hours of law enforcement training.  This training included the investigation, detection, and identification of controlled substances.  I have consulted and conversed with several other agents and officers from various local, state, and federal agencies on various drug cases, including the distribution of heroin, cocaine, methamphetamine, marijuana, fentanyl, and other controlled substances.  As a result of this and my own experience and training, I am familiar with heroin, cocaine, methamphetamine, marijuana, fentanyl, and other controlled substances and the methods employed by traffickers of these substances.

### PURPOSE OF THIS DECLARATION

2.     This declaration is submitted in support of a complaint *in rem* for forfeiture of the property located at 1499 NE Hillcrest Drive, Grants Pass, Oregon (hereinafter referred to as "**Defendant Real Property**") and $9,450 in U.S. Currency **(hereinafter "Defendant Currency").**

    A.  Josephine County Official Records, document 2021-012522, shows the **Defendant Real Property** was conveyed by a Personal Representative of the Estate of Jadith

**Declaration of Robert Gilinsky**                                     **Exhibit A Page 1**

Glenette Tiefenback on or about July 8, 2021, to Grantees Jeremy Tiefenback and

Jason Tiefenback, with right of survivorship.



B. **Defendant Real Property** - Property ID R308622: Commonly known as 1499 NE

Hillcrest Drive, Grants Pass, Oregon and legally described as follows:

PARCEL I:

Lot 10, Block 3, WOODLAND TERRACE SUBDIVISION, in Section 9, Township 36
South, Range 5 West of the Willamette Meridian, Josephine County, Oregon.

PARCEL II:

Beginning at the Southeast corner of Lot 10, Block 3, WOODLAND TERRACE
SUBDIVISION, in Section 9, Township 36 South, Range 5 West of the Willamette
Meridian, Josephine County, Oregon; thence North 57° 47' East 11.33 feet to the
Westerly side of an existing wooden fence; thence North 21° 12' 21" West, along the
Westerly side of said fence, 56.79 feet to an angle point on the Northerly side of Lot 9 in
said Block 3; thence South 50° 46' 30" West, along said Northerly side, 22.5 feet to the
Northwesterly corner of said Lot 9; thence South 32° 23' 04" East, along the Westerly
line of said Lot 9, a distance of 53.00 feet to the point of beginning.

**Defendant Real Property** is generally described as follows:

The property is a tract of land situated at 1499 NE Hillcrest Drive Grants Pass, Josephine
County, Oregon more fully described as approximately a 7,405 sq ft parcel located on the
corner of Hillcrest Drive and Beacon Drive. The North Side of the residence is bordered
by NE Hillcrest Drive. The West Side of the property is bordered by NE Beacon Dive.
The South and East side of the property is bordered by neighboring properties. The
residence is accessed by an ungated driveway from the NE Hillcrest Drive side.

**Declaration of Robert Gilinsky**                                          **Exhibit A Page 2**

3.      In this declaration I will demonstrate, based on the evidence I have reviewed, that there is probable cause to believe, and I do believe that **Defendant Real Property** located at 1499 NE Hillcrest, Grants Pass, Oregon, and outlined above was used or intended to be used to facilitate and the **Defendant Currency** is proceeds of the illegal production, conversion, and/or distribution of fentanyl and methamphetamine, in violation of 21 U.S.C. §§ 841, 846, and 856, and are therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) & (7).

4.      The facts set forth in this declaration are based on the following: my own personal observations, my training and experience, and information obtained from other agents, deputies, and officers during my participation in this investigation.  This declaration is for the limited purpose of establishing probable cause.  Therefore, I have not set forth each fact learned during the investigation, but only those facts and circumstances necessary to establish probable cause.

### SUMMARY OF THE INVESTIGATION

5.      In October 2022, police stopped a vehicle operated by Santiago Rivera (Rivera) on Interstate 5 in Josephine County, Oregon.  During the stop, officers found Rivera was in possession of approximately 100 grams of cocaine, 200 grams of heroin, and ten pounds of methamphetamine.  Upon questioning, Rivera admitted to investigators that he was a courier for a Mexico based Drug Trafficking Organization (DTO).  Rivera would pick up drugs from another DTO member residing in California and then transport the drugs to buyers in Grants Pass, Oregon, including Joseph Kanuch (Kanuch)[1]. Investigators were able to confirm Rivera's

---

[1] Joseph Kanuch is a known drug trafficker living in Josephine County Oregon with ties to one or more Mexican based DTOs. It should be noted that between June 2, 2022, and November 15, 2022, KANUCH was in contact with four different Mexico based phone numbers with a total of 487 contacts either by voice or text message.

**Declaration of Robert Gilinsky**                                    **Exhibit A Page 3**

statements that Kanuch was one of his buyers at the time of the interview from observing

multiple text message notifications sent between Rivera's and Kanuch's phones.

6.      Rivera also told investigators during his interview that he also regularly supplied

Jeremy Tiefenback (Tiefenback), a methamphetamine dealer in Grants Pass, Oregon.

<u>Oregon State Wiretap</u>

7.      Between October 23, 2023, and November 14, 2023, through an Oregon State

Wiretap investigators obtained numerous drug related conversations between Tiefenback and

third parties that confirmed Rivera's statements about Tiefenback. The conversations showed

Tiefenback made numerous drug deals over the telephone with third parties and then obtained

the fentanyl and methamphetamine from his own residence, the **Defendant Real Property**, to

complete the drug deals.

8.      For example, one conversation on October 31, 2023, at approximately 1621

hours, showed that during a phone call between Tiefenback and an unknown male on October

31, 2023, the unknown male said, "They want 30 of them". Tiefenback then said, "I'll go straight

home and fix that" and then told the unknown male that he would call him back.

9.      It was clear to investigators, based on their training and experience, that the

subject was talking about the number of pills they wanted and not the number of pounds of meth

because the subject is not known to sell such large quantities of meth. It was further corroborated

just a few days later in the traffic stop of described below, where 29 counterfeit M-30 oxycodone

pills, which contain fentanyl were seized by law enforcement from an individual who had just

met with Tiefenback.

10.     In another example, on November 7, 2023, Tiefenback and a female caller

identified as Amber Rahlf (Rahlf) made numerous calls back and forth to each other discussing

**Declaration of Robert Gilinsky**                                                    **Exhibit A Page 4**

Rahlf taking over the drug dealing for her boyfriend (Shane Barton), who had been arrested. Tiefenback agreed during the phone conversation to sell Rahlf what investigators believed to be fentanyl pills. Tiefenback then left his residence, **Defendant Real Property**, and traveled to the ACE Smoke Planet at 1576 NE 7th Street in Grants Pass, Oregon to meet with Rahlf.

11.     Investigators watched the meeting between Rahlf and Tiefenback at the ACE Smoke Planet and then coordinated with the Oregon State Police (OSP) a traffic stop of Rahlf's vehicle.  After Rahlf had driven a distance away from the meeting spot. The OSP report indicates that OSP Trooper Brown (Trooper Brown) and OSP Trooper Valadez (Trooper Valadez) pulled over Rahlf's vehicle, and Trooper Brown asked Rahlf to exit the vehicle. Rahlf complied and placed her purse and her gloves taken from the pocket of her jacket onto the bumper of the vehicle while Trooper Brown obtained verbal consent from Rahlf to search the vehicle, its contents, and Rahlf's purse.

12.     The OSP report also states that while Trooper Brown and Rahlf reapproached the vehicle to look through Rahlf's purse, Trooper Brown observed Rahlf attempt to collect her gloves from the bumper of the vehicle when she knocked a small plastic bag containing what appeared to be 29 small blue pills out of the gloves and onto the ground. When asked about the pills, Rahlf referred to the pills as "blues", which from my training and experience I know to be slang for counterfeit M-30 oxycodone pills, which contain fentanyl.  Rahlf initially told Trooper Brown that she did not know how the pills got into her pocket, but later in the conversation Rahlf claimed that she obtained the pills by removing her boyfriend's things out of the vehicle and that she intended to throw them away, because she knew they were bad. However, the report also states that the Troopers located additional small amounts of what the report said "appeared" like fentanyl and methamphetamine, along with paraphernalia for using narcotics.

**Declaration of Robert Gilinsky**                                              **Exhibit A Page 5**

13.     Finally, on November 11, 2023, the Oregon State Wiretap captured a phone call between Tiefenback and Rivera, the same individual initially stopped in October of 2022 who admitted to investigators that he supplied Tiefenback with drugs.  During the call, Rivera asked about the crystal (methamphetamine) prices and Tiefenback responded that he sticks to his prices and doesn't lower them. Rivera also asked how the "skittles" were selling, and Tiefenback said it was a select few who liked them, but they were selling.  Tiefenback also told Rivera during the call that his "stack" was building.

14.     In my training and experience "skittles" is a term that is used to describe counterfeit M-30 oxycodone pills, that contain fentanyl.  These pills have been known to be multicolored and are close to the same size as an actual candy skittle.  In addition, in my training an experience, drug traffickers also refer to money in many different terms, including the term "stack" used by Tiefenback.  This typically refers to a pile of money, when used in this context.

Search Warrant

15.     On November 14, 2023, law enforcement served Josephine County Oregon search warrants at multiple locations, including the **Defendant Real Property**.  Upon executing the warrant at the **Defendant Real Property**, law enforcement seized approximately 571.1 grams of suspected fentanyl in the form of counterfeit M-30 oxycodone pills previously referred to as "blues" or "skittles", 888.1 grams of suspected methamphetamine, 94.2 grams of suspected hallucinogenic mushrooms, and 57.6 grams of suspected cocaine. Although Tiefenback told Rivera just three days prior that his "stack" was growing, no significant amount of money was found or seized by law enforcement from the **Defendant Real Property** at the time of the warrant.

**Declaration of Robert Gilinsky**                                          **Exhibit A Page 6**

16.    During the warrant at the **Defendant Real Property**, however, Jeremy Tiefenback did speak with Detective Trent Pruitt (Detective Pruitt) and admitted to knowing Rivera as "Chavo". Tiefenback also admitted to dealing drugs and using the proceeds he made from selling drugs to buy the extras in life. Tiefenback was then lodged at the Josephine County Jail on state charges including Racketeering, Money Laundering, Delivery of Methamphetamine, Possession of Methamphetamine, Felony Delivery of Schedule 2 (fentanyl), and Possession of schedule 2 (fentanyl).  Tiefenback remains in Josephine County jail due to violating his Post-Prison Supervision for his prior 2015 conviction for Delivery of Methamphetamine (case 15CR50693 state court conviction in Josephine County, Oregon).

17.    Also present in the residence at the time of the warrant at the **Defendant Real Property** was Tiefenback's brother, Jason Tiefenback (Jason).  Jason is listed in Josephine County Official Records, document 2021-012522, as co-grantee (co-owner) of **Defendant Real Property.**  During the search warrant, approximately 2 grams of methamphetamine were found in Jason's bedroom within the residence.  Jason was also interviewed by Detective Pruitt at the time of the warrant, in which he admitted to using both fentanyl and methamphetamine.  Jason explained to Detective Pruitt during the interview that he gets his methamphetamine from his brother, Jeremy Tiefenback, and Tiefenback just gives it to him and smokes it with him.  Jason did not specify during the interview whether he received the fentanyl from his brother as well.

Phone Calls from the Josephine County Jail

18.    Shortly after Tiefenback was lodged at the Josephine County Jail on November 14, 2023, he begins to make phone calls to Jennifer Fode (Fode), who is known by investigators through surveillance to be Tiefenback's girlfriend and resides in the white camp trailer parked at the **Defendant Real Property** (as shown in the photo above).  In a jail phone call on November

19, 2023, at approximately 1700 hours, Tiefenback called Fode, and asked Fode to put money on

his books and money on Kanuch's books.  Tiefenback also told Fode to pay the bills that come in

for his mom (deceased), that are from Bank of America[2] and to pay approximately $2,000 in

taxes due on the house (**Defendant Real Property**) with what was "left".  During that

conversation, Fode asked Tiefenback if Tiefenback made the house payment.  Tiefenback said he

didn't think he did, but wait for the next one, and pay them both.

19.     During another jail phone call on November 20, 2023, at approximately 1514

hours, Tiefenback called Fode again. Tiefenback asked Fode to put $1,000 on his books and to

put another $200 on Kanuch's books.  Fode replied that she had already put $200 on

Tiefenback's books and asked why he needed the rest. Tiefenback then got upset and said, "It's

all my fuckin money!"

Contact and Interview with Fode

20.     On November 21, 2023, investigators met with Fode at the **Defendant Real**

**Property** to discuss the money that Tiefenback was referencing in his phone call with Fode the

day before. Fode told investigators that law enforcement had missed Tiefenback's money in their

search during the execution of the warrant and that she found the money in Tiefenback's jacket

along with approximately 30 blue pills[3], which Fode claimed she had thrown away.  After Fode

admitted to putting $1,000 of the funds on Tiefenback's books at the jail, Fode consented to

---

[2] Josephine County official records show that Bank of America currently still holds a Line of
Credit Trust Deed,2012-009311, on the **Defendant Real Property** from borrowers David W
Tiefenback and Jadith G Tiefenback, Jeremy and Jason Tiefenback's deceased parents.

[3] The blue pills that Fode found in Tiefenback's pocket with the cash matches the same
description as the counterfeit M-30 oxycodone pills law enforcement seized during the warrant
that are suspected to contain fentanyl.

**Declaration of Robert Gilinsky**                                                **Exhibit A Page 8**

giving the investigators the remaining funds in her possession that she pulled from Tiefenback's jacket, $9,450.00 U.S. Currency, **Defendant Currency**.

Follow-up Interview with Jason

21.    On January 30, 2024, investigators again spoke with Tiefenback's brother Jason at the **Defendant Real Property** to clarify Jason's role in the DTO and to better understand what Jason was aware of regarding the DTO and its activities. After Jason was informed of his Miranda rights, Jason told investigators that he was aware that his brother, Tiefenback, was dealing "something", and he had told his brother many times to stop dealing.  Jason then clarified that when he told investigators previously that he would get his drugs from his brother, that he would just go over to his brother's bedroom (Jeremy's bedroom) and get them from him. Jason reiterated that he did not have to pay for the drugs, his brother would just give them to him. Jason then stated that if someone else would come over to the house (**Defendant Real Property**) to buy drugs from his brother, they would go into his brother's bedroom, just like he did, and conduct the business there, so Jason would not actually see the deal because it was behind closed doors.

**CONCLUSION**

22.    In summary, the evidence presented in this declaration shows that during the wiretap investigation from only October 23, 2023, to November 14, 2023, Tiefenback had made multiple drug deals utilizing the **Defendant Real Property** for the distribution of narcotics. Although the Oregon State Wiretap and jail phone call conversations listed above only represent a portion of the drug related calls investigators obtained related to Tiefenback's drug activities, these conversations along with interviews of Rivera, Tiefenback, Fode, and Jason, additional surveillance by investigators, and the corresponding drug and cash seizures show that Tiefenback

**Declaration of Robert Gilinsky**                                **Exhibit A Page 9**

was using the **Defendant Real Property** for the distribution of narcotics and also kept the proceeds from these illegal activities, **Defendant Currency**, at the same residence.

23.     Based on the foregoing, I have probable cause to believe, and I do believe that the **Defendant Real Property** was used or intended to be used to facilitate and the **Defendant Currency** is proceeds of the illegal distribution of fentanyl and methamphetamine, in violation of 21 U.S.C. §§ 841, 846, and 856, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) & (7).

24.     I have presented this declaration to Assistant United States Attorney Judith Harper who has advised me that in her opinion, the proposed complaint is supported by probable cause.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746.

Executed this 20th day of February 2024

  _s/ *Robert Gilinsky*_____
Robert Gilinsky
TFO
Drug Enforcement Administration

**Declaration of Robert Gilinsky**                                    **Exhibit A Page 10**